**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.S.-1 and J.S.-2**

**No. 21-0134** (Kanawha County 20-JA-229 and 20-JA-230)

**MEMORANDUM DECISION**

Petitioner Mother S.S., by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's January 15, 2021, order terminating her parental rights to J.S.-1 and J.S.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, J. Rudy Martin, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without granting her an improvement period and without imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2020, the DHHR filed an abuse and neglect petition against petitioner and her boyfriend alleging drug use in the home. Further, the DHHR claimed that the home was so filthy and deplorable that the smell was "breathtaking." A DHHR worker interviewed petitioner's landlord who reported that petitioner had been previously evicted twice for drug use and violating the terms of the rental lease. Specifically, petitioner had allowed strangers to live in the home, failed to supervise the children, and failed to keep the premises clean. The landlord also explained that law enforcement had been called out to the property numerous times due to various fights and noise complaints. The landlord reported great difficulty in waking petitioner after beating loudly

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the two children share the same initials, we will refer to them as J.S.-1 and J.S.-2, respectively, throughout this memorandum decision.

1

on the door to get her attention regarding rental issues and the children. The petition also claimed that petitioner failed to give J.S.-2 his medication for his Attention Deficit Hyperactive Disorder. The worker interviewed eight-year-old J.S.-2 who reported that he had witnessed petitioner and her boyfriend fight and use drugs, and that he had to wake petitioner to get food for himself and his four-year-old sister J.S.-1. Finally, the DHHR alleged that petitioner admitted to using marijuana every day and having used methamphetamine "in the past." Petitioner further admitted to driving a vehicle with the children as passengers without a valid driver's license. Accordingly, the DHHR concluded in its petition that petitioner and her boyfriend engaged in acts of domestic violence, failed to supervise the children or provide adequate and safe housing, and abused substances which negatively impacted their ability to parent.

At the preliminary hearing held in June of 2020, the DHHR worker testified that when she initially went to petitioner's apartment to investigate a referral, petitioner acted aggressively and appeared to be under the influence of drugs, as her speech was slurred and she acted groggy and incoherent. The worker contacted law enforcement officers, and petitioner grabbed the children and abruptly drove away. The worker stated that she also interviewed petitioner's landlord and the maternal grandmother. The worker explained that on the following day, she arrived at petitioner's apartment with law enforcement officers, but petitioner was not home. When petitioner pulled into the driveway, the worker observed petitioner to smell heavily of marijuana, and while removing the children from the vehicle, the law enforcement officer observed marijuana and drug paraphernalia. According to the worker, petitioner's pupils were "pinpoints" indicating drug use. The worker stated that petitioner then allowed her into the home which was "deplorable" and "unfit for living." The worker described car parts and tires in the living room; trash, clutter, and filth throughout the apartment; and a horrid smell from vomit and rotten food. The worker stated that in addition to admitting to using marijuana, petitioner admitted to abusing Xanax. Having heard the evidence, the circuit court ratified the removal of the children and also ordered the DHHR to provide petitioner with parenting and adult life skills services as well as supervised visitations contingent upon petitioner's clean drug screen results. In July of 2020, petitioner tested positive for methamphetamine and ceased submitting to drug screens.

The circuit court held an adjudicatory hearing in September of 2020. The DHHR presented evidence consistent with the petition and the evidence presented at the preliminary hearing. Petitioner denied drug use and testified that the children were "perfectly fine" as they were fed, clean, healthy, and happy. She stated that she was asleep when the DHHR worker first visited the home and admitting to cursing the worker when she answered the door. Petitioner explained that she, her boyfriend, and the children were staying with a friend while the car parts were being repaired in her apartment. Petitioner admitted to smelling of marijuana when she exited the car during the DHHR worker's second visit with law enforcement, but claimed that the drugs and drug paraphernalia found in the car belonged to her boyfriend. Further, petitioner denied all instances of domestic violence and stated that she and her boyfriend never had physical altercations, only verbal fights. However, on cross-examination, petitioner admitted that her boyfriend had recently been incarcerated due to charges based upon domestic violence against her. Having heard the evidence, the circuit court concluded that the children were abused and neglected and adjudicated petitioner an abusing parent.

In December of 2020, the DHHR submitted a court summary, which stated that petitioner had been noncompliant with drug screening and other services, such as parenting and adult life skills classes, throughout the entirety of the proceedings. The DHHR requested the termination of petitioner's parental rights due to her noncompliance with services. In January of 2021, petitioner filed a motion for a post-adjudicatory improvement period. However, after having missed drug screens for nearly five months, petitioner appeared for a random drug screen and tested positive for methamphetamine and amphetamine.

The circuit court held a final dispositional hearing in January of 2021. The DHHR recommended termination of petitioner's parental rights, as she had not complied with services and failed to stay in contact with the service provider or DHHR worker. The worker stated that petitioner stopped participating in services in July of 2020 but reappeared at an MDT around December of 2020, where she expressed a desire to participate in services. However, when service providers reached out to petitioner, petitioner failed to respond. Next, petitioner testified in favor of her motion for an improvement period. She stated that she had been faithfully drug screening for the previous two weeks, was living with friends and seeking employment, and was willing to enter inpatient drug treatment.

The circuit court denied the motion, finding that petitioner "had done nothing to justify the Court granting her an improvement period." The circuit court noted that petitioner had never complied with her case plan and continued to test positive for methamphetamine and amphetamine on the few occasions that she submitted a drug screen. Based on the evidence presented, the circuit court concluded that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future and that termination was necessary for the children's welfare. The circuit court terminated petitioner's parental rights by its order entered on January 15, 2021. Petitioner appeals the dispositional order.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[2]J.S.-1's father's parental rights were terminated below. J.S.-2's father's parental rights were terminated below. The permanency plan is adoption by the maternal grandmother.

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period. Petitioner testified at the dispositional hearing that she had faithfully submitted to drug screens the two previous weeks, was seeking employment and housing, and was willing to enter into inpatient drug rehabilitation. Petitioner asserts that she was never given the opportunity to show the circuit court that she could properly parent her child.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). Finally, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

We find that petitioner failed to demonstrate that she was likely to fully participate in an improvement period. While petitioner contends that she made some positive changes two weeks prior to disposition, petitioner fails to address her glaring absence during most of the proceedings and her complete failure to formulate and participate in a family case plan. Petitioner stopped participating in services and failed to maintain contact with the DHHR workers and service providers as early as July of 2020. At the preliminary hearing, the DHHR was ordered to provide petitioner with adult life skills and parentings classes as well as supervised visitations contingent upon negative drug screens. As petitioner only submitted to a handful of random drug screenings, she never exercised visitations with the children, a fact that supports the circuit court's denial of her improvement period and termination of her parental rights. *See In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) ("[T]he level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently . . . ."). Petitioner also wholly failed to participate in parenting and adult life skills classes. Petitioner clearly chose not to participate in proceedings designed to reunify the family, failed to avail herself of services offered by the DHHR to help her correct the conditions of abuse and neglect, and failed to coordinate with the DHHR to secure drug treatment by the dispositional phase of the case. In light of the overwhelming evidence that petitioner was unlikely to participate in the terms and conditions of an improvement period, we find no error.

Next, petitioner argues that the circuit court erred in terminating her parental rights rather than employing a less-restrictive dispositional alternative pursuant to West Virginia Code § 49-4-604(c)(5). According to petitioner, the children's placement with the maternal grandmother would not have been disrupted if she were granted an improvement period. Petitioner avers that guardianship with the maternal grandmother would have allowed her time to correct her issues and modify custody at a later date.

West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect

or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(d)(3), a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

As outlined above, the evidence demonstrates that petitioner failed to respond to or follow through with a reasonable family case plan. Although petitioner claims that she was willing to enter a drug detoxification program or enroll into inpatient drug treatment at the dispositional hearing, she fails to explain her lack of participation in her case plan. She further fails to explain why she did not stay in contact with her service provider or DHHR worker when she was made aware that her parental rights could be terminated. Petitioner completely failed to participate in formulating a case plan to address the conditions of abuse and neglect. Furthermore, the evidence supports the termination of petitioner's parental rights as necessary for the children's welfare as she had not visited with the children during the pendency of the case and had not corrected the conditions of abuse and neglect. As such, it is clear that that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and the children's welfare required termination of petitioner's parental rights.

Insomuch as petitioner argues that the circuit court should have implemented a less-restrictive disposition such as guardianship with the maternal grandmother to allow her an opportunity to demonstrate that she could correct the conditions of abuse, we have previously held that "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child[ren] will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4. (Citation omitted). Further, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 15, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: October 13, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton